# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case No. 3:11-cr-00015-1** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| GUY SAVAGE | ) | |

## <u>MEMORANDUM</u>

Before the court is defendant Guy Savage's Motion to Dismiss Indictment (Doc. No. 241), which the government opposes (Doc. No. 242). For the reasons set forth herein, the motion will be denied.

## I.     BACKGROUND[1]

A federal grand jury returned the Indictment on January 13, 2011 against defendant Savage, his company Sabre Defence Industries LLC, and four other individuals, alleging conspiracy to violate the Arms Export Control Act, International Traffic in Arms Regulations, and defrauding the United States; violations of the Arms Export Control Act; false statements; mail fraud; wire fraud; and smuggling goods from the United States. (Doc. No. 3.)[2] On February 8, 2011, the United States moved to unseal the Indictment following the arrest of Savage in the United Kingdom on the United States's extradition request. (Doc. No. 6; *see also* Doc. No. 241-1, ¶ 3.) It appears that

---

[1] These background facts are drawn from the record in this case and the Judgment issued by the Westminster Magistrates' Court discharging the extradition proceedings against Savage due to delay, attached as an exhibit to the defendant's Motion to Dismiss. (Doc. No. 241-1.)

[2] All of Savage's co-defendants, other than the corporate defendant, have pleaded guilty and been sentenced. (*See* Doc. Nos. 212, 214, 216, 220.) According to Savage, the corporation filed for bankruptcy and was liquidated sometime between 2011 and 2012. (*See* Doc. No. 241 at 2.) The charges against it remain pending, however.

the United States promptly sought extradition, and a court in the United Kingdom issued an order for Savage's extradition sometime in 2011, which Savage appealed. That appeal was dismissed on November 28, 2012. (*See* Doc. No. 241-1, ¶ 3.)

Rather than face extradition, however, Savage attempted to commit suicide on December 9, 2012. (*Id.* ¶ 4.) In light of this "near fatal suicide attempt" (*id.*), the U.K. Secretary of State for the Home Department ("SSHD") agreed to suspend arrangements for Savage's extradition in order to "to consider whether Savage's extradition to the United States was compatible with Savage's rights as a U.K. citizen under the European Convention on Human Rights" (*id.* ¶ 5). As the Westminster Magistrates' Court explained, this meant that the SSHD "agreed to exercise the so-called 'McKinnon jurisdiction' . . . to consider post-appeal representations limited to the question of whether fresh evidence gave rise to a breech of Convention rights, in the event of extradition." (*Id.* ¶ 6.)

For the next nearly nine years, from January 21, 2013, through October 1, 2021, Savage provided representations and evidence to the SSHD, most recently on October 2, 2021. (*Id.* ¶ 7.) During this period, there were also expert examinations of Savage, and representations of those examinations were provided to the SSHD as further evidence for consideration. (*Id.*) The SSHD did not request additional evidence after Savage's October 1, 2021 submission. (*Id.* ¶ 9.)

On September 13, 2023, nearly two years after Savage's final submission, the SSHD rendered its decision (the "Minded To Decision") on the question of whether Savage's extradition was compatible with his rights under the European Convention on Human Rights. As the Magistrates' Court phrased it, the SSHD "decided that she was minded maintaining the order for the extradition of Mr. Savage, and to take steps to secure his extradition to the United States of

America." (*Id.* ¶ 8.) The "Minded to Decision" apparently meant that the SSHD approved the extradition and rejected Savage's incompatibility claims.

However, rather than submit to extradition at that point, Savage promptly sought judicial review in the United Kingdom of the SSHD's Minded to Decision, and permission for judicial review was granted on May 17, 2024. (*Id.* ¶ 10.) However, at a hearing in December 2024, that proceeding was stayed by agreement of the parties, pending Savage's submission of a separate application to the Magistrates' Court under § 118(7) of the Extradition Act of 2003. (*Id.* ¶ 11.)

The sole issue presented to the Magistrates' Court was whether the SSHD could demonstrate reasonable cause for the failure to extradite Savage within the twenty-eight day period provided for in § 118(2) of the Extradition Act. (*Id.* ¶ 13.) On March 27, 2025, the Westminster Magistrates' Court rendered its judgment. Despite its recognition that the United States was not at fault and would suffer prejudice in the event of discharge, the Court found that the nine-year delay between 2012 and 2021 was attributable to both the United Kingdom and Savage, but the SSHD was entirely responsible for the two-year delay between Savage's last submission of evidence on October 1, 2021 and the issuance of the September 2023 Minded to Decision, and that delay was not reasonable. (*Id.* ¶ 36.) Having concluded that the SSHD had "not discharged her burden to show the reasonable cause for the delay," the Magistrates' Court ordered the "discharge" of Savage's extradition under § 118(7) of the Extradition Act. (*Id.* ¶ 37.)

Neither party pursued an appeal of that Judgment, and Savage accordingly withdrew his request for judicial review of the Minded to Decision. (Doc. No. 242-2.) As it stands, the United States has no viable option for extraditing Savage from the United Kingdom.[3]

---

[3] The parties agree on this point. (*See* Doc. No. 241 at 4–5 ("[T]here is no indication that the government will ever be able to bring Mr. Savage into the jurisdiction for prosecution, just short of lying in wait on the off chance that he steps foot off the British Isles and is grabbed by a

Shortly thereafter, Savage filed his Motion to Dismiss in this court. (Doc. No. 241.) He argues that the Indictment should be dismissed because of the "extraordinary" delay of fourteen years between the issuance of the Indictment and the termination of the extradition proceedings in the United Kingdom, at least part of which, according to Savage, was determined by the Magistrates' Court to be attributable to the United States. (*Id.* at 3.) He also argues that it is "unreasonable" to leave the case "open, hanging over Mr. Savage's head indefinitely." (*Id.*) He argues that dismissal of the Indictment is warranted under Rule 48 of the Federal Rules of Criminal Procedure and that, "while perhaps not binding," the "factors considered by courts in determining whether a defendant's Speedy Trial Rights have been violated are instructive." (*Id.* at 4.)

The United States argues in response that dismissal is not warranted, because the lengthy delay is not attributable to the United States; the defendant has never asserted a right to a speedy trial in this case; and he is not entitled to a presumption of prejudice and cannot articulate any particular prejudice he will suffer if the Indictment is not dismissed. (Doc. No. 242.)

## II.    DISCUSSION

The Federal Rules of Criminal Procedure authorize a court to dismiss an indictment if "unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). "By its terms Rule 48(b) is discretionary and, according to the Reporter's Notes, reflects the inherent power of courts to dismiss for want of prosecution." *United States v. Ciammitti*, 720 F.2d 927, 929 (6th Cir. 1983). This court has recognized that dismissal under Rule 48(b) "should be imposed only in extreme circumstances, such as where the delay is purposeful or oppressive." *United States v. Morin*, 308 F. Supp. 2d 835, 846–47 (M.D. Tenn. 2003) (Echols, C.J.) (citing *United States v.*

different country." (footnote omitted)); Doc. No. 242 at 11 ("Indeed, by his own admission, if [Savage] were to choose to never leave the United Kingdom, it is likely that the United States would have no lawful means of bringing him to justice for his crimes.").)

*Sears, Roebuck & Co.*, 877 F.2d 734, 737, 739 (9th Cir. 1989)). In *Morin*, Judge Echols first found no constitutional or statutory speedy trial violation after a lengthy analysis. *See id.* at 840–46. He then succinctly considered the defendant's Rule 48(b) argument and swiftly concluded that "[a] Rule 48(b) dismissal would be improper here because: (1) the Government has committed no misconduct which would call for dismissal; and (2) all of the delay here is attributable to Defendant." *Id.* at 847.

In the present case, Savage does not actually seek dismissal on the basis that his constitutional or statutory right to a Speedy Trial has been violated.[4] Instead, he argues only that "Rule 48(b)(3) provides that a court may dismiss an indictment if unnecessary delay occurs in bringing a defendant to trial" and that, "while perhaps not binding," the factors set forth by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), for "determining whether a defendant's Speedy Trial Rights have been violated are instructive." (Doc. No. 241 at 4.) The *Barker* factors are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. Savage "suggest[s] that in considering whether dismissal is appropriate, the Court should consider these [*Barker*] factors, as well as the overarching reasonableness of the delay contemplated by Rule 48(b)." (Doc. No. 241 at 4.) And, of course, he argues that these factors all weigh in favor of dismissal of the Indictment.

The United States' Response appears to construe the Motion to Dismiss as asserting a speedy trial violation, and the government agrees that the four factors set forth in *Barker* govern its resolution, although it argues that the factors weigh against dismissal of the Indictment.

---

[4] As a noncitizen living abroad (*see* Doc. No. 1 ¶ 4), Savage has no constitutional rights. *Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) (citing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020) ("[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution.").

This court is not persuaded that *Barker* is applicable here. Instead, the court, in the exercise of its discretion, finds that dismissal under Rule 48(b) is not warranted, simply because it is clear that any delay in bringing the charges against Savage to trial are attributable entirely to the actions of (or lack of action by) Savage and the United Kingdom. Savage was initially arrested within a month of his indictment, and the United States promptly sought—and was granted—an order for his extradition from the United Kingdom within months of the Indictment. Any delay in the execution of that order, up through the ultimate discharge of that order, was due to events entirely outside the control of the United States government.

Even if the court were to consider the *Barker* factors, they clearly weigh against dismissal of the Indictment. The length of the delay in this situation is simply not relevant, because Savage does not contend that the United States was in any way dilatory in pursuing his arrest and extradition, and none of the delay after the order of extradition was issued was caused by the United States. The reason for the delay, as set forth above, is that Savage has actively opposed extradition, while the United Kingdom failed to act with reasonable promptness in addressing his claims. The defendant, even now, has not asserted a right to a speedy trial—and, as noted, he has no basis for asserting the right, being a foreign national outside the United States and not in the custody of the United States abroad. (*See* Note 4, *supra*.) The defendant asserts prejudice only vaguely, without pointing to any specific evidence important to his defense that has been lost due to the passage of time.

The defendant also argues that holding the Indictment open is unreasonable, insofar as it requires him to live with the threat of extradition hanging over his head indefinitely and inhibits him from traveling outside the United Kingdom, knowing that the United States is "lying in wait on the off chance that he steps foot off the British Isles and [can be] grabbed by a different

country." (Doc. No. 241 at 5.) These may be "reasonable concerns," but they do not support dismissal of the Indictment. *In re Kashamu*, 769 F.3d 490, 493 (7th Cir. 2014). As the Seventh Circuit stated in *Kashamu*, in rejecting a similar argument offered in support of a petition for a writ of mandamus filed by a defendant who had successfully avoided extradition for sixteen years:

> At any time during this long interval [the petitioner] had only to show up in the federal district court . . . to obtain a determination of his guilt or innocence. When a suspected criminal flees from imminent prosecution, becoming a fugitive before he is indicted, the statute of limitations on prosecuting him is suspended. Similarly, when a defendant flees the country to escape justice, the inference is that he didn't want a speedy trial—he wanted no trial. And if he doesn't want a speedy trial, he can't complain that the judiciary didn't give him one. The defendant is as much a fugitive in the second case as in the first.

*Id.* (citations omitted).

True, Savage (like Kashamu) "didn't literally flee the United States, since he was never in the United States." *Id.* Regardless, "he knew he was under indictment in this country, yet rather than come here to fight the validity of the government's charges, he fought tooth and nail (and successfully) to prevent his being extradited from the United Kingdom to the United States." *Id.* Consequently, he was "functionally a fugitive," and "he deliberately forewent the opportunity for a speedy trial." *Id.* (citations omitted).

In any event, the statute of limitations is tolled by the issuance of the Indictment. *United States v. Smith*, 197 F.3d 225, 227 (6th Cir. 1999). Thus, if Savage ever comes to the United States, whether voluntarily or involuntarily, he could be brought to trial in this court. *See Kashamu*, 769 F.3d at 492 ("An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it." (quoting *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990)). Should that ever happen, Savage would be free at that time to raise a defense based on a constitutional or statutory speedy trial violation. For now, he has failed to establish that unreasonable delay in bringing him to trial warrants dismissal of the Indictment.

## III.    CONCLUSION

Savage's motion is without merit and will, therefore, be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge